```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
  VALERIANO CORTES,                                         :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
                - against -                                 :
                                                            :   15 Civ. 1718 (BMC)
                                                            :
  CITY OF NEW YORK, NYC POLICE DET.                         :
  PHILIP VACCARINO, shield #4885 and                        :
  DETECTIVE MATHEW REICH, shield #122,                      :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Under New York law, it is a crime to carry prescription medication outside of its original prescription container unless it is for current personal consumption. The issue before me is whether a police officer has probable cause to arrest and refer a suspect for prosecution when the suspect is carrying prescription medication in a photographic film canister, but that canister is in a box right next to the original prescription bottle that contains more of the same medication, and the suspect offers an explanation about having spilt some of the medication and placing it in the film canister as the first handy container. I hold that the officer does not have to accept the explanation and conclude that the suspect is telling the truth. Moreover, even if a reasonable officer would accept the explanation, an officer who does not is entitled to qualified immunity.

**BACKGROUND**

The facts are straightforward.[1] Defendant Officer Reich observed plaintiff leave a methadone clinic on Staten Island and drive away in a vehicle with Pennsylvania license plates. Maybe the Pennsylvania plates at a New York drug treatment center explain why Officer Reich pulled plaintiff over; the record suggests that was the reason but does not directly address that issue. But once Reich pulled plaintiff over, there is no material dispute about what happened.

He asked plaintiff to step out of the car. He then asked if plaintiff had anything in his pocket. Plaintiff responded that he had medication in his pocket consisting of three loose pills, one each for blood pressure, diabetes, and hypertension. (There may have also been a prescription pill bottle in his pocket; the record is not clear.)[2] At that point, Reich observed a combination lock box on the front passenger seat of the vehicle. It was about 18 inches long and 6 inches to 12 inches tall. Plaintiff gave Reich the combination to open the box, although plaintiff was aware that if he did not consent, Reich would need a search warrant to open the box.

Reich opened the box. Inside, he found plaintiff's two-week allocation of methadone from the clinic (12 bottles of liquid and one "wafer")[3]; about $4200 in cash in a bank envelope;

---

[1] Plaintiff's opposition papers are not well organized. Putting aside the fact that plaintiff's counsel has ignored this Court's Individual Practice Rules concerning the form of summary judgment papers, the selected pages from plaintiff's deposition are exhibited in non-sequential order, requiring the Court to read many pages before finding the one to which plaintiff cites. Plaintiff's counsel would do well to note that "Judges are not like pigs, hunting for truffles buried in the record." Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys., 309 F.3d 433, 436 (7th Cir. 2002) (internal quotation marks omitted).

[2] Plaintiff's summary judgment papers assert that Reich found a pill bottle in plaintiff's pocket; plaintiff contradicted himself at his deposition, sometimes testifying that these pills were loose in his pocket and sometimes testifying they were in a pill bottle in his pocket. It may be that plaintiff meant that he had his three daily medications together but outside their original containers, that is, "loose" from the pills of like kind.

[3] That is what plaintiff testified at his deposition. In opposition to summary judgment, he has submitted the dispensation form from the methadone clinic which says he received pills. I don't think it matters.

several bottles of labeled prescription drugs, including one containing Clonazepam, a controlled substance; and, most importantly for our purposes, a black, photographic film canister which also contained a quantity of Clonazepam.

Plaintiff tried to explain to Reich, although he asserts that Reich would not listen, that he had the Clonazepam in a film container because he had spilt some of his prescription medication in to a sink accidentally and had grabbed the film container as the closest available container to scoop it up.

Reich arrested plaintiff for criminal possession of a controlled substance. After the arrest, defendant Officer Vaccarino arrived on the scene. He transcribed what Reich told him onto the arrest paperwork and signed the criminal complaint as the arresting officer, charging plaintiff with three counts of criminal possession of a controlled substance in the third, fifth and seventh degree.

The complaint alleges, and it is undisputed, that the criminal proceedings were terminated in plaintiff's favor. Plaintiff thereupon commenced this action under 42 U.S.C. § 1983 and included state law claims under the Court's supplemental jurisdiction. After discovery and voluntary dismissal of some of plaintiff's state law claims, defendants have moved for partial summary judgment as to part of plaintiff's false arrest and malicious prosecution claims.[4]

---

[4] Defendants appear to recognize that regardless of the disposition of this motion, there needs to be a trial as to whether Reich had probable cause to stop plaintiff's car. Of course, the disposition of the instant motion may significantly narrow the damages to which plaintiff is entitled if he does recover on the remainder of that claim. See Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) (holding a victim of an unlawful stop and seizure can only recover damages related to the invasion of privacy occasioned by the search, not "for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution"); Kennedy v. City of New York, No. 11 Civ. 1451, 2013 WL 3490351, at *4 (E.D.N.Y. July 10, 2013).

**DISCUSSION**

**I**

A plaintiff claiming false arrest under § 1983 must establish that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Marshall v. Sullivan, 105 F.3d 47 (2d Cir. 1996). An arrest is privileged if it is supported by probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983). Accordingly, probable cause is a complete defense to a claim of false arrest. Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999) (citing Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)).

Probable cause, in turn, exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (internal quotation omitted). Police officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). The arresting officer has no duty "to investigate exculpatory defenses offered by the person being arrested . . . before making an arrest." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

In the instant case, defendants rely exclusively on the combination of New York Public Health Law § 3345, Possession of Controlled Substances by Ultimate Users Original Container, and Penal Law § 220.03, Criminal Possession of a Controlled Substance in the Seventh Degree, as demonstrating probable cause for this arrest. The former provides: "Except for the purpose of current use by the person or animal for whom such substance was prescribed or dispensed, it

4

shall be unlawful for an ultimate user of controlled substances to possess such substance outside of the original container in which it was dispensed." N.Y. Pub. Health L. § 3345 (McKinney's 2015). The latter provides, with inapplicable exceptions, that "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance . . . . " N.Y. Penal L. § 220.03 (McKinney's 2015). In the present context, section 220.03 effectively "piggy-backs" on section 3345 by taking its "unlawful[ness]" element from that statute.

Under this statutory framework, Reich was faced with at least two plausible scenarios once he obtained plaintiff's consent and saw what was in the lock box. First, plaintiff could have been telling the truth. Perhaps he accidentally spilled some Clonazepam into his sink, grabbed a film canister that happened to be nearby, and scooped them in there. He then put both containers in his lock box which is where, according to the undisputed record, he keeps all of his medications. That story is consistent with the fact that he had a number of other medications in the lock box, including the methadone that he had just received.

A second plausible scenario, however, was that plaintiff had separated a portion of his Clonazepam into a film canister to sell it or do something else unauthorized with it. After all, the sink story has some holes in it, like from where did plaintiff spill the Clonazepam from? If he accidentally spilled it from the Clonazepam bottle, why did he need a separate bottle to contain it? If he was concerned about dampness from the sink, why not just wrap it in a tissue? And how did he happen to have a film canister at hand in his bathroom? The presence of $4200 in cash surrounding these drugs might also suggest criminal activity.

There may be other plausible scenarios. The point, however, is that Reich did not have to choose between them. Neither of the two that I have identified was so plainly accurate that

Reich could be rightly accused of disregarding obvious facts that would show the absence of probable cause. Cf. Celestin v. City of New York, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) (noting that police must not ignore exculpatory evidence that would void probable cause if taken into account); Williams v. City of New York, No. 02 Civ. 3693, 2003 WL 11434151, at *4 (S.D.N.Y. Oct. 23, 2003). Indeed, it is understandable if police officers have a certain skepticism in accepting explanations from a suspect in the face of facts which, if unexplained, would constitute probable cause.

The court reached a similar conclusion on somewhat analogous facts in Deanda v. Hicks, ___ F. Supp. 3d ___, No. 13 Civ. 1203, 2015 WL 5730345 (S.D.N.Y. Sept. 30, 2015). There, the plaintiff was pulled over for speeding. As she was searching through her purse for her driver's license, the officer saw an unmarked transparent bottle containing blue pills which he recognized as oxycodone. The plaintiff explained that the pills belonged to her sister; that her sister had accidentally left them at her house the previous night; and that she was in fact on her way to return the pills to her sister. Nevertheless, the officer arrested the plaintiff under similar Public Health and Penal Law statutes to those at issue here. The court, finding probable cause to arrest, held that there was a plain violation under the language of the statute because the pills were not in the prescribed container nor was a prescription for them present. See also Michaels v. City of New York, No. 10 Civ. 2666, 2011 WL 570125 (S.D.N.Y. Feb. 16, 2011) (dismissing false arrest claim where plaintiff had three loose pills in his pocket despite his assertion that he had a prescription for them).

Officer Reich did not have to take the chance that plaintiff was dissembling and in fact had separated his Clonazepam pills to facilitate their illegal disposition. That was for a prosecutor, judge, or a jury to determine, and in fact that is what occurred. The fact that charges

6

were dropped does not in any way alter the conclusion that Reich had probable cause to effect the arrest.

## II

Even if Reich made the wrong call, and a reasonable officer would have accepted plaintiff's explanation about the film canister because of its proximity to the original prescription bottle of Clonazepam, Reich would still be protected by qualified immunity. Qualified immunity, sometimes referred to as "arguable probable cause," will "shield[] public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). The Second Circuit asks specifically

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 129-30 (2d Cir. 2004) (quotation omitted).

I think in this case, the third criterion is the most significant. It cannot be denied that plaintiff literally violated the language of Public Health Law §3345 and Penal Law § 220.03 – a person cannot possess a controlled substance outside of its prescription container. In fact, the statute's exception for "current use" could reasonably be understood as precluding other

7

exceptions, like plaintiff's explanation about the sink and the handy film canister. In other words, the statute contains no "convenience" exception. Although Fourth Amendment jurisprudence precludes a finding of probable cause when the totality of circumstances plainly show its absence, an officer's reliance on the literal language of a statute will often be sufficient to warrant qualified immunity. As the court in Deanda held:

> Based on this information, including Plaintiff's account of the incident, Hicks [the officer] arguably had probable cause to arrest Plaintiff because at the time of Plaintiff's arrest, it is undisputed that Plaintiff knowingly possessed the oxycodone pills in a bottle without the required label, did not have a prescription, and was not the ultimate user, which, taken together, are 'sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime,' . . . . Hicks, therefore, is entitled to qualified immunity on this claim because it was objectively reasonable for Hicks to believe that probable cause existed based on Deanda's possession of the pills in an unlabeled bottle and without a prescription.

2015 WL 5730345, at *21, quoting, Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003) (internal quotation marks omitted).

Thus, at the very least, plaintiff's literal violation of the statutes entitles Reich to qualified immunity.

### III

To establish a claim for malicious prosecution under New York law, the plaintiff must show, *inter alia*, that the defendant lacked probable cause to believe the proceeding could succeed. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). Although probable cause to arrest is not necessarily determinative of the existence of probable cause to prosecute, see Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999), the only evidence of malice that plaintiff offers here are the facts surrounding his arrest. Where there is no change in the information known to police at the time of arrest and prosecution, probable

cause sufficient to warrant arrest precludes a claim for malicious prosecution. See Williams v. City of New York, No. 10 Civ. 9594, 2012 WL 547508, at *7 (S.D.N.Y. Feb. 17, 2012) ("the distinction between probable cause to arrest and to prosecute only assumes importance when new information comes to light in the hours or days between the arrest and prosecution.").

Plaintiff has pointed to no change in the information available to either Reich or Vaccarino after the time that he was arrested. Since probable cause existed for the arrest and it did not dissipate, that same probable cause requires dismissal of plaintiff's malicious prosecution claim.

## IV

For the sake of good order, I address several claims raised in defendants' motion to which plaintiff did not respond or responded, at best, in passing, and are therefore deemed either abandoned or, in any event, without merit.

First, there is no evidence that Vaccarino had any role in plaintiff's arrest. He arrived after the arrest occurred. Personal involvement is a basic prerequisite to a false arrest claim, see Phillips v. City of New York, 871 F. Supp. 2d 200, 203-04 (E.D.N.Y. 2012), and thus the false arrest claim against Vaccarino is dismissed.

Second, plaintiff has not responded to defendants' argument that plaintiff may not maintain his claim that Reich illegally searched his lock box since plaintiff consented to the search. Consent obviously defeats any claim for illegal search and seizure. See Schneckloth v. Bustamonte, 412 U.S. 218, 243-44, 93 S. Ct. 2041, 2556 (1973).

Third, plaintiff contends that Vaccarino is liable for malicious prosecution because the criminal complaint that he drafted, based on the information given to him by Reich, charged not

9

only illegal possession but illegal possession with intent to distribute. As noted above, the claim for malicious prosecution fails because there was probable cause for arrest. Putting that aside, the record contains no evidence that Vaccarino gave any false information to the prosecutor. His opinion that the facts would support an intent to distribute charge does not supplant the determination that the prosecutor had to make. See Bailey v. City of New York, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015). Finally, the separation of some of plaintiff's Clonazepam into a film canister alongside $4200 in cash would support at least arguable probable cause of an intent to distribute, if not probable cause itself, and thus entitle Vaccarino to qualified immunity.

## CONCLUSION

Defendants' motion for partial summary judgment is granted. The case will proceed to trial on the remainder of plaintiff's claim as previously scheduled.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      December 1, 2015